
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–13–696

| | |
|---|---|
| | **OPINION DELIVERED** APRIL 16, 2014 |
| CLEVELAND LEE WRIGHT | |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION |
| V. | [NO. CR–2012-1124] |
| | HONORABLE BARRY ALAN SIMS, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Cleveland Wright appeals his convictions by a Pulaski County jury of first-degree domestic battering, fleeing, and possession of cocaine, for which he was sentenced to a term of 780 months in the Arkansas Department of Correction. On appeal, he argues that a police officer's testimony violated the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. We find merit in appellant's argument but hold that the circuit court's error was harmless and affirm his convictions.

Appellant was married to Ronique Wright, and they lived in an apartment with their children in Jacksonville, Arkansas. Early in the morning on February 22, 2012, Ms. Wright, bleeding from serious knife wounds and "fading in and out," went to the apartment of her neighbor, Pamela Livings. Ms. Livings called 911, and Ms. Wright provided law-enforcement officers with a description of appellant's vehicle. Officers subsequently located and pursued a vehicle matching the description on Pike Avenue in North Little Rock.

Appellant led the officers through North Little Rock and Sherwood, driving sixty miles-per-hour on city streets and running through stop signs and red lights. He turned onto Highway 161 and increased his speed to ninety and ninety-five miles-per-hour, at one point passing a stopped school bus with flashing lights. He finally stopped after pulling into a driveway along Highway 161.

Dr. Robert Haley Shaw, a surgeon at Baptist Health Medical Center in North Little Rock, examined and operated on Ms. Wright. He determined that she had thirty lacerations, including a stab wound in her abdomen large enough for her intestine to protrude through the abdominal wall. She also had wounds on her chest, including one near the aorta, multiple wounds on her left arm and left hand, as well as a collapsed left lung.

On April 12, 2013, the State filed an amended, three-count felony information against appellant in which the State alleged that on or about February 22, 2012, appellant committed the following criminal offenses: (1) Class B felony first-degree domestic battering; (2) Class D felony fleeing; and (3) Class D felony possession of cocaine. In the information, the State requested that any sentence of imprisonment imposed on appellant for having committed first-degree domestic battering be enhanced pursuant to Arkansas Code Annotated section 5-4-702(a) (Supp. 2011), because he committed the offense in the presence of a child, his and Ms. Wright's minor son, R.J. The State also alleged in the information that appellant was a habitual offender with four or more prior felony convictions, as defined in Arkansas Code Annotated section 5-4-501(b) (Supp. 2011).

Appellant's jury trial was held on April 16–17, 2013. The jury found him guilty of having committed first-degree domestic battering in the presence of a child, felony fleeing,

SLIP OPINION



and cocaine possession. The jury sentenced appellant as a habitual offender, and the circuit court imposed the four consecutive sentences of imprisonment, which resulted in an aggregate sentence of sixty-five years pursuant to a sentencing order entered on April 22, 2013. Appellant filed a timely notice of appeal on May 16, 2013.

Appellant argues that the circuit court erred in denying an objection made by his counsel on the basis of the Confrontation Clause of the Sixth and Fourteenth Amendments to the United States Constitution. In a criminal prosecution in a state court, the defendant has a Sixth Amendment right to confront the witnesses against him. *Chambers v. State*, 2012 Ark. 407, ___ S.W.3d ___. A defendant's Sixth Amendment right to confront the State's witnesses is applicable to the states as a matter of the Fourteenth Amendment because it is essential to a fair trial. *Id.* at 2, ___ S.W.3d at ___ (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)). For questions of constitutional interpretation, this court employs a de novo standard of review. *Chambers*, *supra*.

Appellant argues that the circuit judge erred in denying his Sixth and Fourteenth Amendments Confrontation Clause-based objection to State's witness Jacksonville Police Officer John Alberson's repeating statements made to him out of court by the victim, Ms. Wright, which included the statement that she and her husband had argued at their apartment. His attorney made a timely objection during the direct examination of Officer Alberson as follows:

> OFFICER ALBERSON: With regard to what I do remember about Ronique Wright, what was her condition when I first saw her, she was bleeding from multiple puncture wounds. She had[,] I could tell[,] stab wounds in her hands, her mouth, around her neck area. She did have a shirt on but it was, I mean, she was just covered in blood.

She was in and out of a panic state. She was able to tell me what had happened[,] but I had her sit down.

I grabbed a white plastic lawn chair and actually had her sit down until the ambulance arrived on scene. And I got as much information from her as I possibly could on the suspect.

DEPUTY PROSECUTING ATTORNEY: Let's talk about that for a minute. With regard to what information did she give you about the suspect?

DEFENSE COUNSEL: May we approach, please?

THE COURT: Yes.

(Counsel approached the bench for a conversation with the circuit judge, out of hearing of the jury, as follows:)

DEFENSE COUNSEL: Judge, it sounds like they're going to offer testimony from Ms. Ronique Wright that was told to this officer. I have two objections on that. One is hearsay. Also, the other is that it violates the Confrontation Clause of the Sixth Amendment of the U.S. Constitution, also the *Crawford* [*v. Washington*, 541 U.S. 36 (2004)] case that supports it that this is testimony.

These were questions asked by this officer of Ms. Ronique Wright for the purpose of developing a case and prosecuting this case. And because of that and because I have no way of cross-examining her since she is not present here today, this violates the Sixth Amendment's confrontation clause and it is also rank hearsay.

DEPUTY PROSECUTING ATTORNEY: My first argument, Judge, is that exception to hearsay under [Arkansas Rule of Evidence] 803, you have present sense impression and also excited utterance. It would qualify—these statements would qualify under that.

And secondly, this is based on what she told him about the defendant and the car, the description of the car. A broadcast is put out. So that's also basis of action.

DEFENSE COUNSEL: These are all testimonial in nature, Judge. Disallowed without her being present.

DEPUTY PROSECUTING ATTORNEY: Why they're looking for the car, I mean, because she gave them that description.

THE COURT: I will allow it.

4

(Then, in open court:)

OFFICER ALBERSON:  With regard to what information did she give me about the person that did this to her, she advised me her and her husband had got into an argument at their apartment, which was actually across the parking lot, apartment 5B, I do believe, was their apartment. And that they had a son in the room, that was in the living room.

DEFENSE COUNSEL:  Judge, if we could approach.

(Counsel again approached the bench for a conversation with the circuit judge, out of hearing of the jury, as follows:)

DEFENSE COUNSEL:  Judge, I have a continuing objection. I thought we just discussed this that he was going to give a description of the car that he obtained from her. Because we're not going in to the circumstances of this case. That's clearly testimony that he has elicited. This is—the testimony they offer that it violates the Confrontation Clause, Judge.

DEPUTY PROSECUTING ATTORNEY:  Is the Court -- has the Court made a ruling with respect to the hearsay exception?

THE COURT:  Right.

DEPUTY PROSECUTING ATTORNEY:  I mean, she has been stabbed and she's trying to relay this information to the officer.

DEFENSE COUNSEL:  Keep your voice down.

DEPUTY PROSECUTING ATTORNEY:  Is it a hearsay -- so can I continue?

THE COURT:  I say that's an exception.  You may continue.

DEFENSE COUNSEL:  Judge, this is not a hearsay argument.

THE COURT:  Okay.

DEFENSE COUNSEL:  This is a Sixth Amendment Confrontation Clause argument under the *Crawford* case.

THE COURT:  That's denied.  That's denied. Have a seat. Thank you.



Appellant claims that Officer Alberson's on-scene questioning of the victim, Ms. Wright, was not conducted to address an on-going emergency. There are multiple United States Supreme Court cases that analyze the Confrontation Clause issue appellant presents to this court. The most recent is *Michigan v. Bryant*, 131 S. Ct. 1143 (2011), where the Supreme Court discussed the relevant line of cases and further analyzed the legal principles governing "testimonial" hearsay, which the Supreme Court discussed in *Crawford*, *supra*, and later in *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813 (2006) (consolidated for purposes of appeal). In *Crawford*, the Supreme Court introduced the concept of testimonial hearsay and held that if the out-of-court declarant is unavailable to testify at trial and if the defendant has not had a prior opportunity to cross-examine the declarant, the Confrontation Clause prohibits the introduction at trial of the declarant's out-of-court statements.

In *Davis* and *Hammon*, the Supreme Court further developed the concept of testimonial hearsay to "determine more precisely which police interrogations produce testimony" and therefore implicate a Confrontation Clause bar. *Davis* and *Hammon*, 547 U.S. at 822. The Supreme Court made clear that not all those questioned by the police are witnesses and not all interrogations by law-enforcement officers are subject to the Confrontation Clause. *See Bryant*, 131 S. Ct. at 1153. Similar to the instant case, *Davis* and *Hammon* were both domestic-violence cases. In *Davis*, the victim made the statements at issue to a 911 operator during a domestic disturbance with her former boyfriend. She told the operator, "'He's here jumpin' on me again,'" and, "'He's usin' his fists.'" 547 U.S. at 817. The operator then asked the victim for the perpetrator's first and last names and middle initial, and at that point in the conversation the victim reported that he had fled in a car. *Id.*



at 818. As in this case, the victim did not appear at the trial, and the State introduced the recording of her conversation with the 911 operator. *Id.*

In *Hammon*, police responded to a domestic-disturbance call at the home of the victim and perpetrator, who were married, where the victim was found alone on the front porch. She appeared "'somewhat frightened,'" but told them "'nothing was the matter.'" *Bryant*, 131 S. Ct. at 1154 (quoting *Hammon v. State*, 829 N.E.2d 444, 446–47 (Ind. 2005)). The victim gave the police permission to enter the house, where they noticed a gas heater with the glass front shattered on the floor. One officer remained in the kitchen with the perpetrator, while another officer talked to the victim in the living room about what had happened. *Id.* The perpetrator tried several times to participate in the victim's conversation with officers, and he became angry when the police required him to stay away from her. *Id.* Officers asked the victim to fill out and sign a battery affidavit, in which she provided a detailed description of the altercation. *Id.* The victim did not appear at the trial, and the officers who spoke with her testified as to her statements and authenticated the affidavit. *Id.* The circuit court admitted the affidavit as a present-sense impression and admitted the oral statements as excited utterances under state hearsay rules. *Id.* The Indiana Supreme Court affirmed Hammon's conviction, holding that the victim's oral statements were not testimonial and that the admission of the affidavit, although erroneous because the affidavit was testimonial, was harmless. *See Hammon v. State*, 829 N.E.2d at 458–59.

The Supreme Court consolidated the cases, expanded the meaning of "testimonial" first analyzed in *Crawford*, and discussed the concept of an ongoing emergency:



Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Bryant*, 131 S. Ct. at 1154 (quoting *Davis*, 547 U.S. at 822). The Supreme Court went on to hold that the statements at issue in *Davis* were non-testimonial, but the statements in *Hammon* were testimonial. *Id.* The Supreme Court distinguished the statements in *Davis* from the testimonial statements in *Crawford* on several grounds, including that (1) the victim in Davis was speaking about events as they were actually happening, rather than describing past events; (2) there was an ongoing emergency that the elicited statements were necessary to resolve; and (3) the statements were not formal. *Davis*, 547 U.S. at 827.

In *Hammon*, however, the Supreme Court specifically held that "[i]t is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct." *Id.* at 829. There was not an emergency in progress, and the officer questioning the victim was not seeking to determine what was currently happening, but rather what had already occurred. *See id.* at 830. The Supreme Court held that it was more formal because officers interrogated the victim in a room separate from her husband, the perpetrator, where, "some time after the events described were over," she "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed." *Id.* The Supreme Court held that because the victim's statements "were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation," *id.* at 832, they were testimonial.

8

In the case before us, appellant's counsel made a *Crawford*-based objection to Officer Alberson's repeating in-court statements made to him out of court by Ms. Wright, who was appellant's spouse. The record before us indicates that Ms. Wright was not available to testify at appellant's trial, and appellant had not had a previous opportunity to cross-examine her.

Appellant asserts that the facts of the Supreme Court's most recent case analyzing testimonial hearsay in the context of a police officer's on-the-scene questioning of a victim of a crime, *Bryant*, *supra*, has facts similar to this case. In *Bryant*, a police officer, responding to a radio dispatch, found a man lying on a gas station parking lot, having been shot in the abdomen. The victim subsequently died of his wounds; however, before he was removed from the crime scene, officers were able to speak with him for about ten minutes. *Id*. During that discussion, the victim was able to tell officers that Richard Bryant had shot him, where the shooting had occurred, and at what time. *Id*. At Mr. Bryant's trial, officers were allowed to repeat in court what the victim had told them about the incident.

In *Bryant*, a majority of the Supreme Court held that the officers' repetition in court of the victim's out-of-court statements were not testimonial hearsay and were not, therefore, prohibited from introduction into evidence by the Sixth and Fourteenth Amendments' Confrontation Clause. Much of the opinion is an overview of the prior decisions in *Crawford*, *Davis*, and *Hammon* regarding testimonial hearsay in a similar situation. The Supreme Court reiterates that its position on the testimonial-hearsay issue is that the appropriate analysis is intensely fact-driven and must be decided on a case-by-case basis.

The Supreme Court in *Bryant* held that answers that police officers get from a victim of a crime at the scene are not testimonial hearsay if they are later repeated in court by the

officers when the primary purpose of the police officers' on-the-scene questioning of the victim is to enable the police to meet an ongoing emergency. The Supreme Court noted specifically that the circumstances of the encounter between officers and the victim provide the context for determining why officers questioned the victim, and that the circumstances are to be viewed objectively. *Bryant*, 131 S. Ct. at 1156. The Supreme Court held that "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." *Id*. at 1160. The Supreme Court noted the informality of the police questioning of Mr. Bryant, but concluded that "informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent." *Id*. Moreover, the Supreme Court explicitly stated,

> The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist the police in addressing an ongoing emergency lack the testimonial purpose that would subject them to the requirement of confrontation. As the context of this case brings into sharp relief, the existence and duration in an emergency depend on the type and scope of danger posed to the victim, the police, and the public.

*Id*. at 1162. The *Bryant* Court then summarized the nature of the situation the police faced in that particular case as follows,

> For their part, the police responded to a call that a man had been shot. [T]hey did not know why, where, or when the shooting had occurred. Nor did they know the location of the shooter or anything else about the circumstances in which the crime occurred. The questions they asked—"what had happened, who shot him, and where the shooting occurred"—were the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety and possible danger to the potential victim, and to the public.

*Id*. at 1165–66 (internal citations omitted).

10



A close examination of the questioning by Officer Alberson of Ms. Wright, as well as her answers, demonstrate that Officer Alberson was not, objectively, facing an ongoing emergency that posed a danger either to the public at large, or specifically to Ms. Wright or himself. Officer Alberson testified that he questioned Ms. Wright to get "as much information from her as I [possibly] could on the suspect." She told Officer Alberson that she and her husband "had got into an argument." It is important to note that the Supreme Court in *Bryant* stated, "Domestic violence cases like *Davis* and *Hammon* often have a narrower zone of potential victims than cases involving threats to public safety." *Bryant*, 131 S. Ct. at 1158. Officer Alberson testified that he had been dispatched to a "stabbing"—information that informed Officer Alberson, *before* he encountered Ms. Wright, that she was not the victim of a shooting rampage. In *Bryant*, the Supreme Court indicated that the presence of a firearm, as opposed to another sort of weapon, such as the fists of a domestic abuser, contributed to an objective sense that no ongoing emergency was present. *Id*. at 1158–59, 1163–64. Additionally, Officer Alberson also testified that Ms. Wright had told him that appellant "had left the area." This information would support Officer Alberson's objectively reasonable belief that he did not face an ongoing emergency while questioning Ms. Wright.

We hold that this situation was more akin to *Hammon*, in that none of the information gathered by Officer Alberson in questioning Ms. Wright would have led an objectively reasonable person to conclude that he was confronting an ongoing emergency during his encounter with Ms. Wright.

The nature of the crime committed against Ms. Wright was undisputedly one of domestic violence. The offense was not committed by a stranger, but rather by her husband, appellant. It is also undisputed that by the time Officer Alberson questioned Ms. Wright, appellant had fled the scene. The information Officer Alberson obtained would have suggested to an objectively reasonable person that appellant did not pose an ongoing threat to the public, to Ms. Wright, or to the police. Because Ms. Wright's out-of-court statements to Officer Alberson were not made in the context of an ongoing emergency, we hold that they were testimonial hearsay when repeated in court by Officer Alberson and the circuit court erred in denying appellant's *Crawford*-based Confrontation Clause objection to the admissibility of Ms. Wright's out-of-court statements.

That said, we affirm appellant's convictions, holding that the error by the circuit court was harmless beyond a reasonable doubt, and appellant can show no prejudice. The information conveyed by Officer Alberson was not challenged by appellant and was also presented through other witness testimony independent of Officer Alberson's testimony.

Beyond the mere assertion of the right to confront witnesses, appellant must also demonstrate prejudice by the denial of examination of the witness or that such a request would have availed him anything. *See Miller v. State*, 2010 Ark. 1, 362 S.W.3d 264. A Confrontation Clause violation is subject to harmless-error analysis, meaning harmless beyond a reasonable doubt. *Hughes v. State*, 2012 Ark. App. 586, at 5–6. This court has held that whether the denial of the right to confront a witness is harmless beyond a reasonable doubt depends on numerous factors, including (1) the importance of the witness's testimony in the State's case; (2) whether the testimony was cumulative; (3) the presence or absence of

evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the State's case. *Id.*

Ms. Wright did not appear or testify at appellant's trial; however, R.J., the son of appellant and Ms. Wright, who was seven years old at the time of trial, testified that he was in the living room when he saw appellant stab Ms. Wright with a knife in the kitchen. During his direct examination, the prosecutor asked Officer Alberson what information Ms. Wright gave him about the person who had stabbed her. Officer Alberson testified as follows:

> She advised me her and her husband had got into an argument at their apartment, which was actually across the parking lot, apartment 5B, I do believe, was their apartment. And that they had a son in the room, that was in the living room.

On appeal, appellant challenges only Officer Alberson's testimony that Ms. Wright and appellant had had an argument in their apartment while their son was in the living room.

Appellant has never disputed the facts related by Officer Alberson, that he and Ms. Wright had argued in the presence of their son. It should be noted that Officer Alberson's account of what Ms. Wright told him did not include any assertion by her that appellant had stabbed her. Rather, it was their son, R.J., who testified independently of Officer Alberson's testimony that he saw appellant stab Ms. Wright. Later in appellant's trial, Sergeant Robert Washington of the Jacksonville Police Department testified that he observed appellant at the jail and heard appellant tell other arrestees that he was there because he had stabbed his wife after she had first stabbed him. He explained that appellant also told the other arrestees that he had led the police on a high-speed chase and had swallowed a large amount of cocaine.

In reviewing the factors listed above for determining whether the denial of the right to confront a witness is harmless beyond a reasonable doubt, we hold that Officer Alberson's testimony—that a marital argument took place in front of appellant and Ms. Wright's son—was not required to prove the State's case. That testimony was cumulative to both R.J.'s graphic testimony that he saw appellant stab Ms. Wright and Sergeant Washington's testimony that he heard appellant tell others that he had stabbed his wife. The admission of Officer Alberson's testimony was harmless beyond a reasonable doubt because it did not put the jury in possession of any fact that was not otherwise admitted without objection. Because appellant has failed to show how Officer Alberson's testimony could possibly have contributed to the jury's verdict, he has failed to show any prejudice, and any error was harmless beyond a reasonable doubt.

Affirmed.

WOOD and BROWN, JJ., agree.

*Kent C. Krause*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.