SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–123

| | |
|---|---|
| ANTHONY DONNELL TOOMBS<br>APPELLANT | **Opinion Delivered** FEBRUARY 11, 2015 |
| V. | APPEAL FROM THE PULASKI<br>COUNTY CIRCUIT COURT, FIRST<br>DIVISION<br>[NO. CR 12-3263] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE LEON JOHNSON,<br>JUDGE |
| | AFFIRMED; and REMANDED FOR<br>CORRECTION OF SENTENCING |

**BART F. VIRDEN, Judge**

A Pulaski County Circuit Court jury convicted appellant Anthony Toombs of being a felon in possession of a firearm. He was sentenced as a habitual offender to forty years' imprisonment in the Arkansas Department of Correction, with fifteen years added pursuant to the firearm-enhancement statute. He was also convicted of first-degree murder and sentenced to thirty-five years' imprisonment with fifteen years added pursuant to the firearm-enhancement statute. On appeal, he raises four points for reversal. We affirm.

On August 19, 2012, officers from the Little Rock Police Department responded to a reported homicide at 1624 Brown Street. At the scene, police officers discovered the body of Eddie Larkin with a gunshot wound to the back of the head. Moran Ellis identified Anthony Toombs as the person with whom Mr. Larkin had argued over drugs the night

SLIP OPINION

before, and told police that Mr. Toombs had been armed and acting aggressively.

Following the murder, Detective Tommy Hudson of the Little Rock Police Department developed a "photo spread" help identify the person responsible for the crime. He took the picture of the person he believed to be responsible and placed that photo in with six others that looked similar. On August 22, 2012, after several witnesses identified Mr. Toombs from this photo spread, Detective Hudson obtained a warrant for Mr. Toombs's arrest, and then attempted to call Mr. Toombs to convince him to surrender himself. When Detective Hudson called Mr. Toombs's home, he spoke instead to Mr. Toombs's wife, who said she would let Mr. Toombs know. Mr Toombs called back within an hour. Detective Hudson made an audio recording of the phone call, which was played at the trial. In the phone conversation, Mr. Toombs told Detective Hudson that he had given Mr. Larkin money for groceries, but Mr. Larkin spent it on drugs instead. When Mr. Toombs went back to retrieve the money, Mr. Larkin became aggressive, and Mr. Toombs shot him in self–defense. He told Detective Hudson that he "just pulled it off" without intent to kill. Mr. Toombs promised Detective Hudson he would turn himself in as soon he had gotten his affairs in order and hired an attorney. Detective Hudson read Mr. Toombs his *Miranda* rights, and advised Mr. Toombs that there was a warrant for his arrest, and that the police would be looking for him in the meantime.

Before dawn on August 23, 2012, North Little Rock Police Officer Ira Dale Whitney observed a truck run a stop sign. Officer Whitney attempted to stop the driver for a traffic violation, but the driver continued, running two more stop signs. The driver sped up to thirty

SLIP OPINION

miles per hour when Officer Whitney turned on the siren, and after a few blocks a man jumped out of the truck and escaped down an alley. As he was leaving the truck, Officer Whitney shined the spotlight on the driver's face, getting a good look at him. A City of Little Rock employee's badge with Mr. Toombs's name and photograph on it was later found in the truck. Officer Whitney identified Mr. Toombs as the driver.

On August 29, 2012, Mr. Toombs, accompanied by his attorney, turned himself in to Detective Hudson.

## I. *Sufficiency of the Evidence*

In his final point on appeal, Mr. Toombs asserts that the evidence was not substantial enough to support the verdict. We affirm the trial court. In reviewing a challenge to the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the State, considering only the evidence that tends to support the verdict. *Satterfleld v. State*, 2014 Ark. App. 633, 448 S.W.3d 211. We will affirm if the finding of guilt is supported by substantial evidence, direct or circumstantial. *Id*. Substantial evidence is that which is of sufficient force to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. The weight of the evidence and credibility of the witnesses are matters for the fact-finder, not for the trial court on a directed-verdict motion or this court on appeal. *Id*. The fact-finder is free to believe all or part of a witness's testimony, and may resolve all questions of conflicting testimony and inconsistent evidence. *Id*. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *White v. State*, 2014 Ark. App. 587, 446 S.W.3d 193. The question

of whether the circumstantial evidence excludes every hypothesis consistent with innocence is a decision for the fact-finder, whose determination will not be disturbed unless it reached its verdict using speculation and conjecture. *Id.*

First-degree murder is defined as "with the purpose of causing the death of another person, the person causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2002). A person acts with a particular purpose with respect to his conduct or a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-1-102(17) (Supp. 2011) and § 5-2-202(1) (Repl. 2006).

Viewed in the light most favorable to the State, the jury was able to reach its determination without using speculation or conjecture. The evidence supporting a conviction for first-degree murder was supplied by several witnesses and by expert testimony.

Witnesses Corey Wright and Moran Ellis made early statements, within the first hours and days after the crime, that Mr. Toombs and Mr. Larkin had been fighting the night before about bad drugs Mr. Larkin had sold Mr. Toombs and about money. Leheith Carter and Moran Ellis stated that they knew Mr. Toombs personally and recognized him that night. Carter, Ellis, and Wright all told police that evening that Mr. Toombs had a gun earlier, and though at the trial they denied the veracity of those previous statements, the State was able to cross-examine them about their changed recollection. At trial, Mr. Ellis said that he had lied the evening of the murder to lead police away from considering him as a suspect, and that he did not remember anything about the evening in question; however, his recorded statements were admitted to support his original testimony. In his recorded statements from

SLIP OPINION

August 19 and 20, Mr. Ellis described in great detail how Mr. Toombs was holding a weapon, and how he hugged Mr. Toombs with the gun close to his own chest so that Mr. Toombs would not shoot Mr. Larkin. On cross-examination, Mr. Ellis admitted that he was dishonest at times and that he did not want to be at the trial that day.

Leifel Hudspeth testified at trial that he saw Mr. Larkin arguing with someone over drugs and that he identified Mr. Toombs in a photo spread a few days after the crime occurred, though at trial he said his identification was coerced. He was cross-examined on this assertion and admitted that he did make those statements in the few days after the crime.

Next, Detective Hudson testified that Mr. Toombs told him in a phone interview on August 22, 2012, that he shot Mr. Larkin in self-defense during an argument over misused money. In the taped phone conversation played at the trial, Mr. Toombs admitted that he owned an old gun. Witnesses for the State offered evidence that the gun was similar to the one used to kill Mr. Larkin and could have been used as the murder weapon. Detective Hudson further testified at trial that the crime scene looked like a struggle had occurred, but not necessarily a violent struggle where someone had fought for his life. This testimony supported the assertion that Mr. Toombs had not acted in self-defense. Detective Hudson testified that shooting someone in the head, as Mr. Larkin had been, was much more difficult to do than shooting someone in the body, supporting the idea that someone shot Mr. Larkin intentionally and to kill, and not during a struggle for Mr. Toombs's life.

As discussed previously, Officer Whitney of the North Little Rock Police Department presented evidence of Mr. Toombs's flight after being advised that he was wanted for the

SLIP OPINION

murder of Mr. Larkin.

Dr. Stephen Erikson, the Deputy Chief Medical Examiner of the Arkansas State Crime Lab, also testified for the State. First, he testified that there was no evidence that Mr. Larkin's gunshot wound occurred at close-range, supporting the State's assertion that the two men were not struggling and that Mr. Toombs did not shoot in self-defense. Dr. Erikson testified to the path of the bullet and that it was inconsistent with a ricochet-induced path. A straight path would indicate intent to shoot the victim in the head, according to the testimony of Dr. Erikson.

The evidence presented at trial was substantial enough that the jury did not have to resort to conjecture to convict Mr. Toombs of first-degree murder; therefore, we affirm on this point.

As for the sufficiency of the evidence that Mr. Toombs was a felon in possession of a firearm, we affirm. Arkansas Code Annotated section 5-73-103(a) (Supp. 2011) states that it is a crime for a person who has been convicted of a felony to possess or own a firearm. Subsection (c)(1)(B) states that a person who violates this section commits a Class B felony if the person's current possession of a firearm involves the commission of another crime. A certified copy of Mr. Toombs's felony robbery conviction was entered into evidence. Furthermore, Mr. Toombs admitted to being in possession of a firearm and admitted that he shot Mr. Larkin. Mr. Ellis told police in his first and second statements that Mr. Toombs had a firearm on the evening of August 19, 2012. At the close of the State's case Mr. Toombs moved for a directed verdict and renewed the motion at the close of all the evidence as

SLIP OPINION

required by Arkansas Rule of Criminal Procedure 33.1.

The jury would not have had to resort to conjecture to determine that Mr. Toombs was a convicted felon in possession of a firearm, and that he committed first-degree murder while in possession of the firearm. We will not second-guess the jury's credibility determinations. *Tate v. State*, 2012 Ark. App. 672. Accordingly, we hold that there is substantial evidence to support the jury's verdict, and we affirm Mr. Toombs's conviction.

## II. *Out-of-Court Statements*

At trial, two recorded statements made to police by Moran Ellis on August 19 and 20, 2012, were allowed into evidence. In his first statement, Mr. Ellis told police that Mr. Toombs was angry and aggressive toward Mr. Larkin on the evening of August 19, 2012, because "Eddie sold him some bad dope." In the second statement, Mr. Ellis told police,

> When I first pulled up, Eddie and the dude–number 2, Gladys's son were arguing about Eddie telling Mr. Toombs that whatever he sold to him was good. So I know Mr. Toombs, but he has a gun in his right hand. I remember it was in his right hand because I put mine around his and told him I would give him his money back.

At trial, Mr. Ellis testified that he had no memory of making either statement, or of the events of the evening of August 19, 2012. Mr. Toombs asserts that because Mr. Ellis cannot recall the events of the evening in question, he cannot be questioned about those events, and therefore the admission of the statements is a violation of the Sixth Amendment right to confront the witness. On this point we affirm.

For questions of constitutional interpretation, the appellate court employs a de novo standard of review. *Wright v. State*, 2014 Ark. App. 231, 434 S.W.3d 401.

Mr. Toombs cites Rule 803(5) of the Arkansas Rules of Evidence concerning recorded

recollections, which states:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The Sixth Amendment places restraints on the use of such testimonial hearsay against a defendant. *See, Crawford v. Washington*, 541 U.S. 36, (2004). When the out-of-court statement is testimonial in nature, the Sixth Amendment's Confrontation Clause is implicated. *Davis v. State*, 2011 Ark. 373. However, the right of confrontation is not violated where testimonial hearsay is admitted against the defendant, and the declarant is present at trial and available as a witness. *Crawford*, 541 U.S. at 59. In *Davis,* appellant did not dispute that the witness was present at trial, but as in the present case, the appellant asserted that he was unable to effectively cross-examine the witness due to her lack of memory. *Id*. The Arkansas Supreme Court did not find a Sixth Amendment violation, even though Davis declined the opportunity to confront the witness through cross-examination. *Id*. If the witness is available in court to cross-examine, memory issues aside, then the Confrontation Clause is satisfied. *Id*.

This argument has been made before, and the court has declined to veer from the course it has taken. In *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004) the witnesses claimed to have no memory of events previously testified to, and the Arkansas Supreme Court held that because the defendant was able to confront the witness and cross-examine her during the trial, the requirements of the Sixth Amendment were met. *Id*.; and *See* U.S. Const. Amend. VI. The requirements of the Confrontation Clause of the Sixth Amendment are

SLIP OPINION

satisfied in the present case, and we affirm on this point.

### III. *Motion in Limine*

Officer Whitney testified at trial that on August 23, 2012, he observed Mr. Toombs fleeing from his abandoned truck. Mr. Toombs argues that his flight from the officer occurred four days after the murder of Mr. Larkin, and therefore was too far removed in time from the crime of which he was accused to be relevant evidence. On this point, we affirm.

We review issues of admissibility of evidence by an abuse-of-discretion standard, meaning that the appellant must make a showing that the trial court acted improvidently, thoughtlessly, or without due consideration. *Holland v. State*, 2014 Ark. App. 644, 448 S.W.3d 220 (2014). A trial court has broad discretion in making evidentiary rulings and will not be reversed absent an abuse of that discretion. *Id*. The trial court is vested with a great deal of discretion in determining whether the evidence is relevant, and a reviewing court will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *Id*.

Arkansas Rule of Evidence 404(b) states,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

Evidence of flight is admissible to show consciousness of guilt, even if the flight was not immediately after the alleged commission of the crime. *Hayes v. State*, 2014 Ark. 104, 431 S.W.3d 882. The supreme court has held that two days after the crime of murder has been committed, though not immediately following, was close enough in time to be probative of

9

SLIP OPINION

guilt. *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996). In *Hill*, our supreme court held that evidence that the appellant committed other crimes to get an automobile and money so that he could continue his flight from the scene of the murder was relevant proof of flight even though the crimes were committed two days after the murder. In *McCullough v. State*, the appellant had been convicted of aggravated burglary and was charged with rape. 2009 Ark. 134, 298 S.W.3d 452 (2009). He was awaiting transport to begin serving his sentence on the aggravated burglary conviction when he attempted to escape. *Id.* The appellant contended that the trial court abused its discretion by allowing the testimony about the escape attempt because the escape was not similar to the crimes with which he had been charged. The supreme court affirmed the trial court, stating,

> This court has said, however, that when evidence of a prior crime reflects a consciousness of guilt, it is independently relevant and admissible under Rule 404(b). *Eliott v. State*, 342 Ark. 237, 27 S.W.3d 432 (2000). This court has further long recognized the proposition that the flight of a person charged with commission of a crime has some evidentiary value on the question of his probable guilt.

*McCullough*, 2009 Ark. 134, at 8, 298 S.W.3d at 456. In the present case, Mr. Toombs had been advised by a police officer that he was a fugitive wanted in connection with a murder charge, he had been read his *Miranda* rights, and he had been told that the police would be searching for him. The trial court determined that Mr. Toombs's flight was probative of consciousness of guilt, and therefore relevant evidence. We find no abuse of discretion and affirm on this point.

IV. *Evidence of a State Witness's Conviction of a Crime Involving Dishonesty*

Witness Leheith Carter was called by the State to testify about the events that led up

to his discovering Mr. Larkin's body. Initially, the trial court decided that Mr. Carter's 2005 theft by receiving conviction was not a crime involving dishonesty. Later, however, the trial court changed its ruling and allowed the introduction of evidence concerning the conviction. The attorney for Mr. Toombs asked the court, "Will I be able to ask about Mr. Carter's 2005 theft by receiving conviction?" and the court responded, "Yes." Mr. Toombs's attorney questioned Mr. Carter in her cross-examination: "You do have a 2005 conviction for theft by receiving, correct?" Mr. Carter responded affirmatively. Mr. Toombs's assertion that he was denied the opportunity to introduce evidence concerning Mr. Carter's conviction is not supported by the record. Therefore, on this point we affirm.

Finally, we must address an error in the sentencing order. Mr. Toombs was convicted of first-degree murder and possession of a firearm by certain persons. The jury was instructed that Mr. Toombs was a habitual offender; however, the sentencing order does not reflect that he was sentenced as a habitual offender, rendering the sentencing illegal on its face. The trial court is hereby instructed to correct the sentencing error.

Affirmed; remanded with instructions to correct sentencing order.

GLADWIN, C.J., and HIXSON, J., agree.

*Scholl Law Firm, P.L.L.C.*, by: *Scott A. Scholl*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.