Edward BUTLER *v.* STATE of Arkansas

CR 76-184                                     549 S.W. 2d 65

Opinion delivered April 4, 1977
(In Banc)
[Rehearing denied May 9, 1977.]

*Malcolm Smith*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *B. J. McCoy*, Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Edward Butler and Larry Hutcherson were jointly charged with a capital felony in the shooting of Ron Brooks, a state policeman acting in the line of duty. The offense occurred on February 27, 1975; so the in-

formation was filed under § 2 (C) of Act 438 of 1973 rather than under § 41-1501 (1) (b) of the Criminal Code, which did not become effective until January 1, 1976. Butler elected, however, to assert defenses under the new Code, which it permits. § 41-102 (4) (Crim. Code 1976). Butler was tried separately, found guilty, and sentenced to life imprisonment without parole, the State having waived the death penalty. The first five points for reversal overlap to such an extent that we shall not try to discuss each one separately.

At the outset we make it clear that the fallacy in the appellant's first five points lies in his attempt to break down into separate steps the continuous course of criminal conduct that must be considered as a whole in passing upon the sufficiency of the State's proof and the admissibility of its evidence. When the entire sequence of events is considered as one continuous criminal occurrence, the five points for reversal are seen to be without merit.

On the morning of the crime the two men jointly charged, Butler and Hutcherson, were prisoners in the county jail at Clarendon. They and a third prisoner escaped together. The jailer, whose living quarters were in the jail, was away at the time. He testified that after the escape two pistols were missing fron his quarters. The first was a .22-caliber pistol which the jailer had converted to a toy for his children by filing down the firing pin, but one could not tell by looking at the weapon that it wouldn't fire. The other was the .357-magnum pistol that was used by Hutcherson to kill Officer Brooks. Butler displayed the .22 in effecting the escape. Since both pistols were taken from the jailer's living quarters and used in the brief period of escape, the jury was justified in concluding that Butler and Hutcherson each knew that the other was armed. It is not necessary that an unlawful concert of action to commit an illegal act be shown by direct testimony; it may be inferred from the circumstances. *Griffin v. State*, 248 Ark. 1223, 455 S.W. 2d 882 (1970). Furthermore, proof of the escape was not inadmissible under the rule excluding evidence of other offenses, for the entire sequence of events was such an inseparable whole that the State was entitled to prove the entire criminal episode. *Polk v. State*, 252 Ark. 320, 478 S.W. 2d 738 (1972).

The escape was reported within seconds by another prisoner, a trusty, who was forced to accompany the escaping group for a few moments. Officer Brooks was at the jail and immediately chased the fugitives to a nearby alley. When he ordered them to halt and fired a warning shot, Butler and Hutcherson fell to the ground. The third prisoner kept on running.

Officer Brooks handcuffed the two men to each other and searched them as they lay on the ground. He took the .22 from Butler, but he did not find the magnum pistol that Hutcherson had taken. As Butler was backing away after the search, the two handcuffed men got to their feet. Several eyewitness accounts differ slightly in details, but the jury could have found that Butler touched the officer or ran into him. Hutcherson picked up the magnum pistol from the ground and shot Officer Brooks twice, killing him. Butler searched the officer's prostrate body and evidently took the officer's pistol. Butler and Hutcherson, still handcuffed, then fled. They were apprehended almost at once, trying to get into a car. The magnum pistol and Officer Brooks's pistol were in that car. Tests for traces of metal upon the hands of the two men indicated that Hutcherson had handled the magnum pistol and Butler had handled Officer Brooks's gun.

Counsel for Butler, in arguing that the State did not prove Butler's implication in the actual shooting, fails to recognize the jury's right to weigh the entire episode as one continuous course of criminal conduct. The two men, each knowing that the other was armed, escaped from the jail. In their pursuit of a common plan to effect an unlawful escape, each was liable for the consequences, even though the particular result may not have been intended. *Griffin* v. *State, supra; Dorsey* v. *State,* 219 Ark. 101, 240 S.W. 2d 30 (1951). The possibility of homicide could be found by the jury to have been part of the planned escape; for otherwise, why did the men equip themselves with pistols? Butler's continued active participation in the attempted escape, as evidenced by his taking Officer Brooks's gun, rebuts the suggestion that he had a change of heart while he lay on the ground. The evidence, to be sure, is to some extent circumstantial, but whether it excluded all other reasonable hypotheses was an issue for the jury, not for this court. *Brown* v. *State,* 258 Ark.

360, 524 S.W. 2d 616 (1975).

Next, the other points for reversal. It is argued that the trial court erred in not instructing the jury, in the language of the new Criminal Code, that it would be an affirmative defense to the prosecution if Butler terminated his complicity prior to Hutcherson's commission of the offense (§ 41-305) or if Butler did not commit the homicide or in any way aid its commission (§ 41-1501[2]).

The court was not required to give those instructions, because the same points had been covered in a defense instruction that was given, with modifications. In that instruction the court told the jury that Butler would be liable as an accessory if he aided Hutcherson in committing the offense. The instruction went on to explain that before the jury could find that Butler was aiding in the killing, "you must find that he was acting in concert with Larry Hutcherson for the purpose of killing Ron Brooks and that he actually aided in the killing." Further, that if Butler was not present for the purpose of aiding, abetting or assisting Hutcherson in killing Brooks, "then the defendant would not be responsible for the murder of the decedent and you must acquit him." Still further, that the State must prove beyond a reasonable doubt that Butler and Hutcherson, acting in concert and in furtherance of a common objective or purpose, intended to kill Brooks; that Butler aided Hutcherson in killing Brooks, pursuant to a common objective; that Butler in fact aided or attempted to aid Hutcherson in killing Brooks; that Butler's actions were the result of premeditation and deliberation; and that by his acts he specifically intended to effectuate the death of Brooks.

In *Dorsey v. State, supra,* we made two statements pertinent to the point now at issue: First, "The court is not required to give a multiplicity of instructions stating the law in various ways." Second, "There is no distinction between one who aids, abets or assists and the one who actually fired the shots." Here the court told the jury in unmistakable terms that Butler could not be found guilty unless he actually aided Hutcherson in killing Brooks, unless the two intended to kill Brooks, and unless their actions were the result of premeditation and deliberation. By its verdict the jury found all those

conditions to be true. That finding necessarily rejected the possibility that Butler terminated his complicity prior to the commission of the offense and did not aid in its commission. The court was not required to make a positive statement of the law, as it did, and then say the same thing in the negative. As a matter of fact, the course chosen by the court was the more favorable of the two, with respect to the defense, because it emphasized the State's burden of proving the points at issue, beyond a reasonable doubt.

We cannot sustain the appellant's argument that the State's waiver of the death penalty precluded the jury from sentencing him to life imprisonment without parole. It is true that Act 124 of 1971, in authorizing the prosecuting attorney to waive the death penalty, added that in such cases the punishment "cannot be fixed at more than life imprisonment." But when that act was adopted, the intermediate punishment of life imprisonment without parole did not exist, that alternative being later provided by Act 438 of 1973. Hence Act 124 simply meant that when the prosecutor waived the death penalty, the jury could not disregard that waiver by condemning the accused to death.

We certainly cannot say that the legislature, by later creating the alternative punishment of life imprisonment without parole, meant to read that penalty also into the prosecutor's waiver of the death penalty. Quite the opposite, § 3 of Act 438 of 1973 provided only two alternative punishments for the offense charged in the case at bar — death or life imprisonment without parole. Hence the appellant's argument would provide yet a third alternative, contrary to the explicit language of Act 438.

Finally, the court reporter's tape recording of the testimony was destroyed by fire before it was transcribed. The reporter prepared a transcript of the testimony from his shorthand notes, but admittedly there were omissions. The trial court settled the record at a hearing at which Butler's attorney was present, but Butler's request that he be allowed to be present in person was denied.

Butler was constitutionally entitled to be personally present at every substantive step in the proceedings. *Davidson* v.

*State*, 108 Ark. 191, 158 S.W. 1103, Ann. Cas. 1915B, 436 (1913). Hence he should have been present when the record was settled, for he might have remembered some error or omission that no one else noticed. Even so, his absence does not in itself entitle him to a new trial. *People* v. *Chessman,* 35 Cal. 2d 455, 218 P. 2d 769, 19 A.L.R. 2d 1084 (1950). The situation is comparable to that in *Jackson* v. *Denno,* 378 U.S. 368 (1964), where the court ruled that the required hearing with regard to the voluntariness of Jackson's confession might be held in a separate post-trial proceeding. So here, we direct that Butler be given an opportunity to examine the court reporter's transcript of the testimony and to personally present to the court any objections he may have. Subject to the outcome of that proceeding, we find no error in the record. As we are required to do, we have examined all objections made at the trial and find none to be meritorious.

Affirmed and remanded.

CONLEY BYRD, Justice, dissenting. I think the appellant was entitled to his instruction embodying his affirmative defense pursuant to Ark. Stat. Ann. § 41-305(2) (Ark. Crim. Code). That statute provides:

"It is an affirmative defense to a prosecution for an offense respecting which the liability of the defendant is based on the conduct of another person that the defendant terminates his complicity prior to the commission of the offense and:
(a) wholly deprives his complicity of effectiveness in the commission of the offense; or
(b) . . .
(c) . . ."

In the commentary the committee in drafting the statute stated:

"Subsection (2) provides an affirmative defense. One who has already engaged in conduct sufficient to create accomplice liability upon the occurrence of the offense may in the time interval before its commission avoid liability, but only in the explicitly designated fashions set out disjunctively by 2(a) through (c)."

To me the instruction given by the Court never made that distinction to the jury. The instruction upon which the majority relies is as follows:

"The defendant is accused of murder, not that he actually fired the shots that took the life of the deceased, but that he aided and abetted the person who did. The defendant would be criminally liable for the conduct of Larry Hutcherson if he were an accessory of Larry Hutcherson in the killing of Ron Brooks. A person is an accessory of another person in the commission of an offense if, for the purpose of promoting or facilitating the commission of the offense, he aided the person in committing that particular offense. In other words, if the defendant was present with the intention and purpose of promoting or facilitating the killing of Ron Brooks and aided Larry Hutcherson in killing Ron Brooks then the defendant would be an accessory. If the defendant merely happened to be present without any intention of aiding and abetting Larry Hutcherson in killing Ron Brooks, he would not be guilty of anything. Before you can find Edward Butler was aiding and abetting in the killing, you must find that he was acting in concert with Larry Hutcherson for the purpose of killing Ron Brooks and that he actually aided in the killing. If you find that the defendant was not present for the purpose of aiding, abetting or assisting Larry Hutcherson in killing the deceased then the defendant would not be responsible for the murder of the decedent and you must acquit him.

In addition to proving the defendant was present, aided and abetted Larry Hutcherson in killing Ron Brooks, and that the defendant committed a voluntary act with that purpose in mind, the State must also prove beyond a reasonable doubt all of the elements of the crime for which he is charged relating to his state of mind. In order to make it perfectly clear, the State must prove all of the following elements beyond a reasonable doubt:

1. That the defendant and Larry Hutcherson acting in concert and in the furtherance of a common objective or purpose intended to kill Ron Brooks.

2. That the defendant was present and did aid Larry Hutcherson in killing Ron Brooks pursuant to a common objective.

3. That the defendant did in fact aid or attempt to aid Larry Hutcherson in killing Ron Brooks and that his actions were the result of premeditation and deliberation and that by his acts he specifically intended to effectuate the death of Ron Brooks."

For the reasons stated, I respectfully dissent.

HOLT, J., joins in this dissent.