Cite as 2021 Ark. App. 259

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-20-349

| | |
|---|---|
| CHADWICK STAGGS | **Opinion Delivered** May 26, 2021 |
| APPELLANT | |
| | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CR-19-747] |
| V. | |
| STATE OF ARKANSAS | HONORABLE WILLIAM PEARSON, JUDGE |
| APPELLEE | |
| | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Chadwick Staggs appeals his conviction of possession of methamphetamine with the purpose to deliver. He was sentenced to fifty-five years' imprisonment. On appeal, Staggs argues that the circuit court (1) erred by denying his directed-verdict motion, (2) abused its discretion by admitting bags of methamphetamine into evidence, (3) abused its discretion by denying his motion for a continuance, (4) abused its discretion and violated his Sixth Amendment right to counsel of his choice by denying his motion to dismiss his counsel, (5) violated his Sixth Amendment right to counsel by holding a reconstruction hearing without the physical presence of his counsel, and (6) violated his Sixth Amendment right to counsel by holding a pretrial hearing without his counsel. We affirm.

On August 2, 2019, the State charged Staggs with possession of at least 10 grams but less than 200 grams of methamphetamine with the purpose to deliver. On August 21, the

court set an attorney-status hearing for September 19, a pretrial hearing for October 21, and a trial for November 5. At the September 19 hearing, Staggs's private counsel appeared for him.

At the October 21 pretrial hearing, his counsel again appeared, but Staggs failed to appear. Counsel informed the court that he had been unable to communicate with Staggs. The court issued a bench warrant for Staggs's failure to appear.

On November 7, Staggs's counsel moved to recall the warrant stating that Staggs had mistakenly believed that he needed to appear for court only on November 5, not October 21. Counsel explained that Staggs had "contacted [him] as soon as he could and notified [him] of the mistake." On December 11, the court set a pretrial hearing for February 10 and a trial for February 18, 2020. On December 23, 2019, the court granted Staggs's motion to recall the warrant.

The court held the pretrial hearing on February 10, 2020, which Staggs attended; however, the court did not make a record of it.[1] At a later reconstruction hearing, Staggs testified that his counsel failed to appear for the February 10 hearing. He stated that he requested a continuance so that he could travel to Little Rock to meet with his counsel and prepare for trial. The court advised him that his counsel needed to file a formal motion. Staggs's trial counsel also testified at the reconstruction hearing that he did not attend the pretrial hearing.

---

[1] The Pope County court reporter stated in an affidavit that prior to "June and July 2020, it was customary that first appearances and preliminary hearings were not recorded unless a record was requested in a preliminary hearing."

The case proceeded to a jury trial on February 18. At the beginning of the trial, Staggs's counsel requested a continuance. He asserted that the State planned to introduce seven bags[2] of methamphetamine but that only one of the bags had been tested. He argued "the difference between something coming back positive on one and coming back on all of them is nearly 60 years prison." He further apologized for the untimeliness of his motion and explained that he had received the testing results the week prior and that he had been in a trial in Phillips County.

The court denied Staggs's continuance motion, finding the motion untimely and that it lacked an affidavit. The court further noted that counsel had appeared forty minutes late for trial and that a jury had already been qualified.

The court then read the information to the jury when Staggs interrupted and informed the court that he wanted to dismiss his attorney. Staggs stated that he had been unable to contact him and that they had not discussed the case. Staggs's counsel agreed and stated that he was unprepared to proceed. The court denied Staggs's request and stated that continuances had already been granted, the trial had been previously scheduled, and they had had time to prepare for trial. The court also stated that Staggs and his counsel could confer during breaks. The court proceeded with trial.

Officer Ronald Wescott testified that he initiated a traffic stop of Staggs, who consented to a search of his person and his car. During Wescott's search of Staggs, he located a knife and a roll of cash. During his search of Staggs's car, he found a family-sized M&Ms bag in the backseat. The M&Ms bag contained multiple small clear plastic bags and a digital

---

[2]Later at trial, the State actually introduced nine bags of methamphetamine.

scale. He also found a syringe in the center console and a crystal–like shard on the driver's seat. Wescott stated that he used a field-test kit on the shard and that it tested positive for methamphetamine.

Wescott explained that after he had discovered these items, Staggs admitted to him that he had been selling methamphetamine for a man in Clarksville. Wescott then transported Staggs to the Pope County Detention Center, and he stated that during transport, Staggs admitted that he had "a lot" of "meth" on him. He then removed a large bag containing a white crystal–like substance from his pants. Wescott testified that he did not open the "big bag" and that he released the items found in the search to Mike Evans of the drug task force. The prosecutor introduced the methamphetamine as State's exhibits 2A and 2B without objection.

Evans testified that he received a digital scale, small bags, and methamphetamine from Wescott. As to the bag of methamphetamine, Evans stated that

> [t]his is the bag that all of this was inside. So that is an individual bag that that methamphetamine was inside of, and all of those were combined with these and I placed them all inside of that one bag.

The prosecutor asked Evans, "When you got it, State's Exhibit 2A and 2B were combined all in one bag?" Evans responded, "Yes." He explained that he "weighed it all together, so all of that inside of one bag" and the bag totaled 45.5 grams. He also testified that he met with Staggs and that Staggs admitted that he had been selling methamphetamine for a man in Clarksville.

Nicholas Lowe testified that he works for the Arkansas State Crime Laboratory and that he received one large bag that contained nine smaller bags each containing a white

4

crystal-like substance. He stated that he analyzed the bag with the largest amount of the substance and that the bag contained 12.7463 grams of methamphetamine. Lowe explained that the laboratory policy is to test only to sustain the highest charge in a case and that Arkansas has a statutory weight range from 10 grams to 200 grams.

Following Lowe's testimony, Staggs moved for a directed verdict and argued that the State had "not made the prima facie case for attempt to deliver." The court denied the motion.

Staggs then testified and admitted that he possessed methamphetamine when Wescott detained him. He noted that he had purchased the methamphetamine in "several bags" because he just "bought everything he had." He planned to "stash them all in different spots" to conceal them from his mother. He stated that he is a heavy methamphetamine user and that he had been using the drug for almost twenty years. He, however, denied selling methamphetamine. He testified that he did not own the car and that a female passenger had tossed the M&Ms bag in the backseat earlier that day. On cross-examination by the State, Staggs further admitted that he had been convicted of possession of methamphetamine in 2010 and 2015. Following Staggs's testimony, he renewed his directed-verdict motion, and the court again denied it.

The jury convicted Staggs, and he was sentenced to fifty-five years' imprisonment. Staggs appealed his conviction to this court.

On December 2, 2020, we remanded the case to the circuit court to reconstruct the record for the February 10, 2020 pretrial hearing. On remand, the circuit court set a

reconstruction hearing for December 16, 2020, but it continued the hearing to December 28 because Staggs was quarantined due to COVID-19 exposure.

On December 28, the circuit court held the reconstruction hearing. Staggs's appellate counsel appeared by videoconference because he had tested positive for COVID-19. Counsel requested a continuance until he could be physically present in the courtroom for the hearing, and he argued that Staggs's Sixth Amendment right to counsel included the physical presence of counsel. The court denied the request. The court noted that Staggs was present in the courtroom and could hear and see counsel. It further offered accommodations for Staggs and his counsel to communicate. The record of the reconstruction hearing was thereafter lodged with this court. We now turn to the merits of the appeal.

On appeal, Staggs first argues that the circuit court erred by denying his directed-verdict motion. He argues that the State presented insufficient evidence that he possessed the methamphetamine with the purpose to deliver. He claims that the evidence showed that he intended to only consume the drug. He further cites Arkansas Code Annotated section 5-64-420(a) (Repl. 2016) and asserts that none of the statutory factors apply here. He acknowledges that Wescott located bags and a scale in the car, but he argues that he did not own the car and that the items were found in the backseat. He also acknowledges that he has prior convictions for possession of smaller quantities of methamphetamine, but he points out that he has no convictions involving drug-related transactions.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only

6

the evidence that supports the verdict. *Id*. We will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id*. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id*. Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*.

Arkansas Code Annotated section 5-64-420(a) (Repl. 2016) states that it is unlawful for a person to possess methamphetamine with the purpose to deliver it. A person who violates this section is guilty of a Class A felony if the person possessed more than 10 grams but less than 200 grams. Ark. Code Ann. § 5-64-420(b)(3). The purpose to deliver may be shown by any of the following factors:

> (1) The person possesses the means to weigh, separate or package methamphetamine or cocaine; or
>
> (2) The person possesses a record indicating a drug-related transaction; or
>
> (3) The methamphetamine or cocaine is separated and packaged in a manner to facilitate delivery; or
>
> (4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of methamphetamine or cocaine; or
>
> (5) The person possesses at least two (2) other controlled substances in any amount; or

(6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver methamphetamine or cocaine.

Ark. Code Ann. § 5-64-420(a)(1)–(6).

Arkansas Rule of Criminal Procedure 33.1 requires a motion for directed verdict to specify how the evidence is deficient. Ark. R. Crim. P. 33.1(c). The motion must be specific enough to apprise the circuit court of the particular basis on which the motion is made. *Wallace v. State*, 53 Ark. App. 199, 201, 920 S.W.2d 864, 866 (1996). The reason underlying this rule is that when specific grounds are stated and the proof is pinpointed, the circuit court can either grant the motion or allow the State to reopen its case and supply the missing proof. *Id.* Our law is clear that a party is bound by the scope and nature of his directed-verdict motion and cannot change the grounds on appeal. *Plessy v. State*, 2012 Ark. App. 74, 388 S.W.3d 509.

Here, Staggs moved for a directed verdict arguing that the State had "not made the prima facie case for attempt to deliver." Counsel did not argue that he believed this was a joint-occupancy situation or that the State had failed to establish a purpose to deliver through the statutory factors. *See Scott v. State*, 2015 Ark. App. 504, 471 S.W.3d 236. Because Staggs did not specify the deficiency in the State's proof, he did not preserve his sufficiency challenge for appellate review. However, even if Staggs had preserved his argument, both Wescott and Evans testified that Staggs admitted he was selling the methamphetamine for a man in Clarksville.

Staggs next argues that the circuit court abused its discretion by admitting the methamphetamine into evidence because the State offered insufficient proof of the chain of custody. However, Staggs did not object to the admission of the methamphetamine at trial.

8

In *Gonzalez v. State*, the supreme court declined to address a challenge to the admission of evidence based on an improper chain of custody when the appellant did not make a timely objection. 306 Ark. 1, 811 S.W.2d 76 (1991). Accordingly, because Staggs did not make an objection to the admission of the methamphetamine, he is precluded from raising the issue on appeal. *See id.*

Staggs also argues that the circuit court abused its discretion by denying his motion for a continuance on the day of trial. He asserts that his counsel admitted being unprepared to proceed and needed time to independently test all of the substance found on him. He argues that the testing could have resulted in a significant difference in the amount of prison time.

We review the circuit court's denial of a motion for continuance for an abuse of discretion. *See Hill v. State*, 2015 Ark. App. 587, 473 S.W.3d 556. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision. *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004). An abuse of discretion requires the appellant to make a showing that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Toombs v. State*, 2015 Ark. App. 71; *Holland v. State*, 2014 Ark. App. 644, 448 S.W.3d 220. Further, a continuance should be granted only upon a showing of good cause. Ark. R. Crim. P. 27.3 (2020); *Hendrix v. State*, 2019 Ark. 351, 588 S.W.3d 17. A lack of diligence alone is a sufficient basis to deny a motion for continuance. *Hendrix*, 2019 Ark. 351, 588 S.W.3d 17 ; *Anthony v. State*, 339 Ark. 20, 2 S.W.3d 780 (1999). An appellant must also demonstrate that, as a result of the ruling on the motion for a

9

continuance, he suffered prejudice that amounts to a denial of justice. *Smith v. State*, 2012 Ark. App. 613.

In *Lukach v. State*, 310 Ark. 38, 834 S.W.2d 642 (1992), the supreme court held that a circuit court did not abuse its discretion by denying a motion to continue trial to complete independent testing for untimeliness. The defendant moved for the continuance three days before trial. *Id.* The court noted that a "legitimate motive to test and challenge the State's results is best evidenced by 1) asking for independent testing sufficiently in advance of the trial, and 2) taking such steps as are necessary to arrange for the testing which would include obtaining an expert and making certain that the samples were available in sufficient time for the testing to occur." *Id.* at 44, 834 S.W.2d at 645.

In this case, we hold that the circuit court did not abuse its discretion by denying Staggs's motion for a continuance. Staggs did not move for a continuance until the day of trial after the jury had been qualified, and he had taken no steps to arrange for any testing. Further, the State charged him with possession of methamphetamine in excess of 10 grams but less than 200 grams, which is a Class A felony. *See* Ark. Code Ann. § 5-64-420(b)(3). The tested amount, from only one of the nine bags, totaled over 12 grams. Staggs fails to explain how the lack of testing of the other bags is of consequence. Given these circumstances, we find no abuse of discretion by the circuit court on this point.

Staggs next argues that the circuit court abused its discretion by denying his request to dismiss his trial counsel, Eugene Clifford. He points out that his counsel arrived forty minutes late for trial and admitted that he was unprepared to proceed. He also discusses several of his counsel's actions throughout the proceedings and asserts that those actions

10

demonstrate that his counsel was unprepared and performed poorly and that he was prejudiced. He further argues that the circuit court's denial of his request violated his Sixth Amendment right to counsel of his choice and cites our supreme court's decision in *Arroyo v. State*, 2013 Ark. 244, 428 S.W.3d 464.[3]

The supreme court has held that such a motion to change counsel is properly treated as a motion for continuance since a change of attorneys so close to trial would require the granting of one. *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995); *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980). The refusal to grant a continuance in order for the defendant to change attorneys rests within the discretion of the circuit court, and the decision will not be overturned absent a showing of abuse of that discretion. *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994).

The right to counsel may not be manipulated or subverted to obstruct the orderly procedures of the court or to interfere with the fair, efficient, and effective administration of justice, particularly when a change of choice is made on the eve of trial primarily for the purpose of delay and without making any effort to obtain substitute counsel. *See Tyler v. State*, 265 Ark. 822, 828, 581 S.W.2d 328, 331 (1979). In each situation, the court must look at the particular circumstances of the case at bar, and the issue must be decided on a case-by-case basis. *Thorne v. State*, 269 Ark. 556, 560–61, 601 S.W.2d 886, 889 (1980).

Factors to be considered by the circuit court include whether there was adequate opportunity for the defendant to employ counsel; whether other continuances have been

---

[3]In his brief, Staggs frames this issue as two appeal points. For brevity purposes, we address these points together.

requested and granted; the length of the requested delay; whether the requested delay is for legitimate reasons; whether the motion for a continuance was timely filed; whether the defendant contributed to the circumstances giving rise to the request for a continuance; whether the reason for the discharge of existing counsel was solely for the purpose of obtaining a continuance; and whether the request was consistent with the fair, efficient and effective administration of justice. *Arroyo*, 2013 Ark. 244, 428 S.W.3d 464. None of these factors is a prerequisite to the granting of a continuance, but these and other factors are the legitimate subject of the court's attention when a continuance is requested. *Id.*

In *Arroyo*, the supreme court reviewed the denial of Arroyo's Rule 37 petition for postconviction relief. *Id.* Arroyo argued that the circuit court violated his Sixth Amendment right to counsel of his choice by denying his request for a continuance to substitute counsel the day before trial. *Id.* The substitute counsel was present and offered to explain to the court why a continuance would be in Arroyo's best interest. *Id.* The court declined to hear from the substitute attorney and subsequently denied the request. *Id.*

Our supreme court reversed Arroyo's conviction and remanded the case for a new trial holding that the circuit court wrongly denied Arroyo's motion when it failed to consider Arroyo's interests in deciding the motion. *Id.* The court stated,

> A circuit court "certainly may consider how last minute continuances . . . tread upon the rights of parties and the demands of a court's calendar." [*United States v. Sellers*, 645 F.3d 830, 838 (7th Cir. 2011).] The key, however, is that these legitimate considerations must be balanced against the reasons in support of the motion for a continuance to accommodate new counsel." *Id.* at 838–39. Here, there is no evidence that the circuit court gave any consideration to [Arroyo's] right to choice of counsel. Rather, the circuit court declined to hear from [substitute counsel] about why a continuance was necessary and failed to conduct any inquiry into [Arroyo's] request for new counsel . . . . The record before us indicates that the

12

circuit court viewed any delay as unacceptable, which we conclude was unreasonable and arbitrary under the circumstances.

*Id.* at 9, 428 S.W.3d at 470. Further, the court pointed out that the question is not whether Arroyo was prejudiced by the circuit court's denial of his motion for continuance to substitute counsel but whether the motion was wrongly denied. *Id.*

We distinguish this case from *Arroyo* and hold that the circuit court did not abuse its discretion by denying Staggs's motion to dismiss his counsel nor did the court violate Staggs's Sixth Amendment right to counsel of his choice. Staggs moved to dismiss counsel during voir dire complaining that he and his counsel had not discussed the case. Yet, Staggs had retained his counsel in September 2019, five months prior to trial, and he had not retained substitute counsel. Further, the case had already been continued in October 2019 because Staggs had failed to appear for a pretrial hearing, and at that hearing, his counsel stated that he had been unable to communicate with Staggs. Then, after the court had issued a bench warrant for Staggs's failure to appear, the court set aside the warrant after Staggs had communicated with his counsel. In making its ruling, the court noted that continuances had previously been granted, that the trial had been rescheduled, and that they had had time to prepare. The court further stated that Staggs could discuss the case with his counsel during breaks. Given these circumstances, we find no error by the circuit court on this point.

Staggs next argues that the circuit court violated his Sixth Amendment right to counsel by denying his request to continue the reconstruction hearing because his counsel could appear only by videoconference due to his COVID-19 diagnosis. He argues that the

Sixth Amendment includes the right to have counsel physically present in the courtroom at a critical stage of the proceeding.[4]

The hearing occurred on December 28, 2020. On November 20, 2020, the supreme court issued a per curium announcing its newest protocols to help protect the public in response to the COVID-19 pandemic. *See In re Response to the COVID-19 Pandemic*, 2020 Ark. 384 (per curiam). The court stated that "[c]riminal matters . . . shall continue to take place either by videoconference or in person" and that it "expects courts to hold court hearings through appropriate and safe means—preferably virtual and telephonic (both on the record)—for justice to occur." *Id.* at 2. Staggs does not challenge the supreme court's authority to implement these procedures. Accordingly, we find no error on this point.

Staggs lastly argues that the circuit court violated his Sixth Amendment right to counsel by holding the February 10, 2020 pretrial hearing without his counsel. He argues that the pretrial hearing was a critical stage in the proceedings because the hearing was his last chance to obtain a continuance to prepare for trial.

A criminal defendant has a Sixth Amendment right to an attorney at every critical stage of the proceedings. *Anderson v. State*, 367 Ark. 536, 242 S.W.3d 229 (2006) (citing *Hammett v. Texas*, 448 U.S. 725 (1980)). A critical stage in a criminal proceeding is every stage in which substantial rights of the criminal defendant may be affected. *Id.* (citing *Mempa*

---

[4]In *Butler v. State*, our supreme court held that a defendant was "constitutionally entitled to be personally present" at a hearing to settle the record for appeal purposes. 261 Ark. 369, 376–77, 549 S.W.2d 65, 68 (1977). The defendant's absence from the hearing, however, did not entitle him to a new trial. *Id.* Instead, the court ordered the circuit court to give the defendant the opportunity to examine the reconstructed transcript and to personally present objections. *Id.*

*v. Rhay*, 389 U.S. 128 (1967)). Further "[a] critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Id.*, 242 S.W.3d at 234 (citing *Commonwealth v. Johnson*, 828 A.2d 1009, 1014 (Pa. 2003)). The complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable. *Anderson*, 367 Ark. 536, 242 S.W.3d 229 (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)).

In *Shabazz v. State*, 2018 Ark. App. 399, 557 S.W.3d 274, this court held that a suppression hearing is a critical stage of a criminal proceeding because "if the suppression court determines that evidence is admissible, that determination is final, conclusive, and binding at trial." *Id.* at 10, 557 S.W.3d at 280. We further noted that "the court's decision on a motion to suppress may often spell the difference between a conviction or an acquittal." *Id.*

Unlike *Shabazz*, we hold that the pretrial hearing in this case was not a critical stage in the proceeding. The circuit court did not rule on any motions. Even though Staggs, appearing in the absence of counsel, moved for a continuance, the court did not rule on his request. The court stated that his counsel needed to a file a formal motion, and nothing prevented counsel from filing the motion following the pretrial hearing, which was held eight days before trial. Thus, the court did not make a determination that was final, conclusive, or binding at trial, and the hearing was not Staggs's last chance to obtain a continuance. Accordingly, since no rulings were made, the pretrial hearing was not a critical

15

stage in the proceedings, and we hold that Staggs's Sixth Amendment right to counsel was not violated.

We therefore affirm Staggs's conviction of possession of methamphetamine with the purpose to deliver.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.