[Cite as *State v. Frericks*, 2025-Ohio-5374.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

DOUGLAS T. FRERICKS,

    DEFENDANT-APPELLANT.

CASE NO. 10-25-08

OPINION AND
JUDGMENT ENTRY

---

Appeal from Mercer County Common Pleas Court
Criminal Division
Trial Court No. 24-CRM-132

Judgment Affirmed

Date of Decision: December 1, 2025

---

APPEARANCES:

    *Holly M. Simpson* for Appellant

    *Erin M. Minor* for Appellee

**MILLER, J.**

{¶1} Defendant-Appellant, Douglas T. Frericks ("Frericks"), appeals from the March 20, 2025 judgment of the Mercer County Court of Common Pleas, sentencing him to prison. Frericks argues the trial court violated his right to counsel, his trial counsel was ineffective, and the trial court erred in requiring his sentences be served consecutively. For the reasons that follow, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

{¶2} On December 19, 2024, the Mercer County Grand Jury indicted Frericks on three counts. The first was domestic violence, in violation of R.C. 2919.25(A), a fourth-degree felony; the second was aggravated possession of drugs, in violation of R.C. 2925.11(A), a fifth-degree felony; and the third was illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a fourth-degree misdemeanor. The next day, the trial court appointed counsel for Frericks and held an initial appearance and arraignment with Frericks' counsel present.

{¶3} On February 5, 2025, Frericks appeared by video from the Mercer County Adult Detention Center, with his counsel present in the courtroom. Frericks pleaded guilty to the first two counts in the indictment, and the State agreed to dismiss the third count. Frericks also requested to be released on an own-recognizance bond and the State did not object. Therefore, the trial court modified Frericks' bond to an own-recognizance bond with several conditions. Among the

conditions were that Frericks was prohibited from using illegal drugs, was subject to random drug testing, and was prohibited from testing positive for illegal drugs. The conditions specified that, if Frericks refused to submit to a drug test or did not provide an appropriate sample within an hour of a test request, then the Court would consider the refusal or inability to provide an appropriate sample as a positive test for drugs.

{¶4} On February 11, 2025, the State filed a motion to revoke bond and requested the court issue a bench warrant for Frericks' arrest. It attached an affidavit from a probation officer stating, (1) on February 10, 2025, Frericks was selected to drug test but did not test, and (2) on February 11, 2025, Frericks was selected to drug test and provided a sample, which tested positive for methamphetamines, amphetamines, cocaine, and THC. The State asserted that both Frericks' failure to drug test and his positive drug test constituted direct violations of his bond conditions. Based on the State's motion and supporting affidavit, the trial court found good cause to revoke Frericks' bond and order that a bench warrant be issued for his arrest. Frericks was served with the bench warrant on February 18, 2025.

{¶5} The next morning, February 19, 2025, the trial court held a hearing. Frericks once again appeared by video from the Mercer County Adult Detention Center. The trial court noted that Frericks' counsel was not present for the hearing. The judge explained to Frericks why an arrest warrant was issued, and then—

because Frericks was not represented by counsel—the judge encouraged Frericks to honor his constitutional right to remain silent and the court simply continued the case. Frericks' bond therefore remained revoked. The trial court explained it would inform Frericks' counsel that he could file a motion to get back in front of the court at any time.

{¶6} At that point, Frericks asked if he could say something. The judge cautioned Frericks and again reminded him that he had a right to remain silent. Frericks then made statements attempting to explain what had happened with the drug testing. The judge simply responded by suggesting to Frericks that his counsel was his "best voice" on the issue and that his counsel could file a motion to make an argument or request a hearing on Frericks' behalf. (Feb. 19, 2025 Tr. at 6). Frericks said, "[a]ll right," and the hearing concluded without the prosecutor saying or presenting anything. (*Id.* at 7).

{¶7} On March 19, 2025, the trial court held a sentencing hearing. It had received and reviewed the presentence report prepared by the probation department. Frericks' counsel appeared and argued that Frericks should only be sentenced to community control supervision, not a prison term. After listening to statements from the prosecutor, Frericks' counsel, and Frericks, the trial court sentenced Frericks to 14 months in prison for the domestic violence conviction and 10 months in prison for the aggravated possession of drug conviction. During the sentencing

hearing, the trial court highlighted that Frericks had a significant history of criminal convictions and had failed to respond favorably to sanctions imposed in the past. The presentence investigation report indicated his criminal history—which spanned three decades with numerous convictions—included prior convictions for domestic violence and aggravated possession of drugs (i.e., the same offenses he pleaded guilty to in this case), as well as probation violations. The trial court imposed the prison sentences consecutively, for a total prison term of 24 months. Frericks received credit for 81 days of incarceration already served and any days served in the Mercer County Adult Detention Center prior to transportation to the institution. This appeal followed.

## II.    ASSIGNMENTS OF ERROR

{¶8} Frericks raises three assignments of error for our review:

### First Assignment of Error

**The trial court violated Defendant's Sixth Amendment right to counsel and his right to counsel under the Ohio Constitution Article I, Section 10 by holding a hearing at a critical stage in the proceedings without Defendant's attorney present.**

### Second Assignment of Error

**Trial counsel was ineffective, causing a violation of Defendant's Sixth Amendment right to counsel.**

### Third Assignment of Error

**The trial court erred in requiring Defendant's sentences to be served consecutively.**

Case No. 10-25-08

### III. DISCUSSION

#### A. First Assignment of Error

{¶9} In the first assignment of error, Frericks argues that his constitutional rights to counsel were violated because his attorney was not present at the February 19, 2025 hearing.[1]

#### 1. Applicable Law

{¶10} The Sixth Amendment to the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." "Similarly, the Ohio Constitution provides: 'In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.'" *State v. Martin*, 2004-Ohio-5471, ¶ 22, quoting Ohio Const., art. I, § 10.

{¶11} "The Sixth Amendment right to counsel applies to critical stages of criminal proceedings." *State v. Schleiger*, 2014-Ohio-3970, ¶ 13, citing *United States v. Wade*, 388 U.S. 218, 224 (1967). Critical stages are proceedings between an individual and agents of the State that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or meeting his or her adversary. *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 fn. 16 (2008);

---

[1] Although Frericks claims that his right to counsel was violated under both the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution, we note that he makes no independent argument based on his right to counsel under the Ohio Constitution.

*see also Wade* at 226 ("in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial"); *Schleiger* at ¶ 13.

### 2. Analysis

**{¶12}** The February 19, 2025 hearing was not a "critical stage" of the criminal proceedings to which Frericks' right to counsel applied and, therefore, his constitutional rights to counsel were not violated despite his counsel's absence. *See Schleiger* at ¶ 13. What the court and parties may have anticipated was going to be a bond hearing on that date instead turned into a simple continuance due to Frericks' counsel not being present. After merely explaining to Frericks the reason he had been arrested and imprisoned, the trial court simply continued the case. By the time Frericks decided to make a statement, the court had already attempted to conclude the very brief hearing. The trial court did not make any decision concerning Frericks' bond or the alleged bond violations, and the prosecutor did not make any statements or present any evidence. *See Barton v. State*, 96 Nev. 267, 268-269 (1980) (hearing was not a "critical stage" where, "apart from supplying appellant with a copy of the indictment . . . nothing of any significance occurred" and appellant "was not required to take any action that would affect his substantial rights in any way," and the trial court took proper action in continuing the hearing); *Staggs*

*v. State*, 2021 Ark.App. 259 (pretrial hearing was not a critical stage in the criminal process where defendant—without counsel—moved for a continuance and the trial court told him his counsel needed to file a formal motion, and the trial court made no ruling at the hearing).

{¶13} Although in certain circumstances a bond hearing could be deemed a critical stage of criminal proceedings,[2] the trial court here took effective measures that avoided the February 19, 2025 hearing being a proceeding that could "amount to [a] trial-like confrontation[]" or one where "counsel's absence might derogate from [Frericks'] right to a fair trial." *Rothgery*, 554 U.S. at 212 fn. 16; *Wade*, 388 U.S. at 226; *see also Barton* at 268-269; *State v. Zaldivar-Proenza*, 957 N.W.2d 93, 99-100 (Minn. 2021) (State's discovery motion at defendant's first appearance seeking to photograph scratches on defendant's arms, where defendant had no counsel present, "was not a critical stage" involving a "trial-like confrontation"); *United States v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995) (where defendant's counsel was absent for part of a conference that took place during trial, rejecting defendant's claim his Sixth Amendment right to counsel was violated, and noting that, "because the matters discussed were minor, the conference was not a 'critical' phase of the trial"). By simply continuing the case, the trial court did not deny Frericks the assistance of his counsel; in fact, the trial court took action to *preserve*

---

[2]*See* R.C. 2937.222(A) (affording an accused person charged with certain offenses the right to be represented by counsel at a hearing to determine if the defendant should be denied bail).

Frericks' rights by not holding a bond hearing, warning him against saying anything, and taking no substantive action. Although Frericks decided make a statement without his counsel present, the trial court neither invited that statement nor made any decision based on that statement.

{¶14} Therefore, we find the trial court acted correctly and Frericks' right to counsel under the Sixth Amendment to the U.S. Constitution and under the Ohio Constitution was not violated. *See McNulty v. Curry*, 42 Ohio St.2d 341, 344-345 (1975) (constitutional rights to counsel under the Sixth Amendment of the U.S. Constitution and under Section 10, Article I of the Ohio Constitution were not violated because the decision to withhold or give consent to a blood-alcohol test was not a "critical stage"); *compare Mempa v. Rhay*, 389 U.S. 128, 130-133 (1967) (defendant had a right to counsel at his revocation of probation hearing, where the trial court decided to proceed with the hearing without defendant being represented by counsel, testimony was presented in support of revoking probation, defendant's probation was revoked, and defendant was sentenced to prison).

{¶15} Frericks' first assignment of error is overruled.

### B.     Second Assignment of Error

{¶16} In the second assignment of error, Frericks asserts his trial counsel was ineffective. He sets forth two reasons. First, his counsel was ineffective because he did not attend the February 19, 2025 hearing. Second, his counsel was ineffective

by making "virtually no arguments and barely [speaking] on Frericks' behalf at any of the hearings." (Appellant's Brief at 5).

### 1. Applicable Law

**{¶17}** To establish ineffective assistance of counsel, the appellant "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Tench*, 2018-Ohio-5205, ¶ 264. "Reversal of a conviction or sentence based upon ineffective assistance of counsel requires satisfying this two-pronged test, and the failure to make either showing is fatal to the claim." *State v. Radabaugh*, 2024-Ohio-5640, ¶ 51 (3d Dist.), citing *State v. Conway*, 2006-Ohio-791, ¶ 165, 168.

**{¶18}** "In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment." *State v. Houston*, 2010-Ohio-6070, ¶ 35 (3d Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance should be highly deferential and refrain from second-guessing strategic decisions of trial counsel. *State v. Sallie*, 81 Ohio St.3d

673, 674-675 (1998). "[T]he errors complained of must amount to a substantial violation of counsel's essential duties to his client." *Houston* at ¶ 36.

**{¶19}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.*, quoting *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142.

### 2. Analysis

**{¶20}** We first address Frericks' claim of ineffectiveness for counsel's failure to attend the February 19, 2025 hearing. As an initial matter, the record does not indicate why counsel did not attend the February 19, 2025 hearing.[3] Frericks concedes that his counsel's absence at the hearing was not his counsel's fault. (*See* Appellant's Brief at 5). Regardless, as we explained above, the record reflects the trial court simply continued the matter and made no substantive decision. Frericks has not shown prejudice from counsel's failure to appear at that hearing. *See State v. Bedford*, 2010-Ohio-3577, ¶ 26, 32 (9th Dist.) (rejecting ineffective assistance of counsel claim due to trial counsel's failure to appear at several pretrial hearings because defendant failed to establish prejudice). Frericks also contends "there is no indication Counsel made any effort to have Frericks' bond reviewed prior to the

---

[3] We note the hearing could not have been scheduled until after Frericks was arrested on the bench warrant and then, when Frericks was arrested, the trial court promptly scheduled the hearing for the next morning.

sentencing hearing." (Appellant's Brief at 5). Although we agree the record does not show his counsel ever moved to reinstate the own-recognizance bond or argued against revocation of the bond, the sentencing transcript indicates that both Frericks and his trial counsel admitted at the sentencing hearing he had violated his bond conditions. Frericks has not shown any such motion or argument had a reasonable probability of success, so his counsel is presumed to have been effective because counsel is not required to take futile acts. *State v. Thompson*, 2021-Ohio-2979, ¶ 14 (3d Dist.).

**{¶21}** Next, Frericks claims ineffective assistance because his counsel "made virtually no arguments and barely spoke on [his] behalf at any of the hearings." (Appellant's Brief at 5). Once again, Frericks has not shown prejudice. We also note that, at the guilty plea hearing on February 5, 2025, Frericks said he was satisfied with the representation he had received from his trial counsel. Frericks also asserts that, at the sentencing hearing, his counsel did not call any witnesses, elicit any testimony, submit any expert reports, or provide any evidence. However, the sentencing hearing transcript shows his trial counsel argued on his behalf, including emphasizing that Frericks had turned himself in after the bond violation as a reason why the court should sentence Frericks only to community control supervision. *See State v. Badertscher*, 2015-Ohio-927, ¶ 30 (3d Dist.); *State v. Caulley*, 2002-Ohio-7039, ¶ 4 (10th Dist.) (counsel may reasonably decide to limit

the number of arguments raised in order to focus on those issues most likely to bear fruit). We are puzzled by Frericks' reference to counsel not submitting an expert report at the sentencing hearing, and Frericks makes no attempt to inform us what such an expert report would say or even what topic it would cover. Ultimately, Frericks has not established ineffective assistance of counsel because he has failed to establish counsel's performance was either deficient or prejudicial. *Badertscher* at ¶ 31 (explaining that, particularly in light of fact the trial court was concerned at sentencing with defendant's extensive criminal history, defendant failed to establish how his counsel making certain statements would have caused the trial court to sentence him any differently).

{¶22} Frericks' second assignment of error is overruled.

### C.     **Third Assignment of Error**

{¶23} In the third assignment of error, Frericks contends the trial court erred in requiring that his sentences be served consecutively. He argues that the facts do not support consecutive sentences and, therefore, imposing the sentences consecutively was contrary to law.

#### 1.     **Applicable Law**

{¶24} There is a statutory presumption in favor of concurrent sentences. R.C. 2929.41(A); *see also State v. Bonnell*, 2014-Ohio-3177, ¶ 23. An exception is found in R.C. 2929.14(C), which provides in part:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). Accordingly, to impose consecutive sentences under R.C. 2929.14(C)(4), the trial court must find: (1) the consecutive service is necessary either to protect the public from future crime or to punish the offender; (2) the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *State v. Elliston*, 2014-Ohio-5628, ¶ 12 (3d Dist.).

**{¶25}** Under R.C. 2953.08(G)(2), an appellate court may modify or vacate a felony sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### 2. Analysis

**{¶26}** Frericks does not argue the trial court failed to make the requisite consecutive-sentence findings under R.C. 2929.14(C)(4). Instead, he contends the record does not support the trial court's findings. We disagree.

**{¶27}** Frericks argues that none of the three subsection in R.C. 2929.14(C)(4)(a-c) apply despite the trial court's findings. As set forth above, the statute only requires that one of the three subsections apply. Focusing on subsection (c), the trial court highlighted that Frericks had a "significant adult history of criminal convictions" and "failed to respond favorably in the past to sanctions imposed . . . for his criminal convictions." (Mar. 19, 2025 Tr. at 8). This was clearly evident in the presentence investigation report. Based on the record before us, we cannot conclude, by clear and convincing evidence, that the record does not support

the trial court's findings that allowed it to impose the two prison sentences consecutively under R.C. 2929.14(C)(4).  *E.g.*, *State v. Priest*, 2019-Ohio-4901, ¶ 15-16 (6th Dist.).

**{¶28}** Frericks' third assignment of error is overruled.

## IV.    CONCLUSION

**{¶29}** For the foregoing reasons, Frericks' assignments of error are overruled.  Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgment of the Mercer County Court of Common Pleas.

*Judgment Affirmed*

Case No. 10-25-08

# **<u>JUDGMENT ENTRY</u>**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Mark C. Miller, Judge

William R. Zimmerman, Judge

John R. Willamowski, Judge

DATED:
/jlm

-17-